873 So.2d 32 (2004)
Wade CLARK, Perry Tucker, Ann Guidry, Martha Lacaze and Harry Dawsey, Each Individually and on Behalf of All Others Similarly Situated
v.
STATE of Louisiana.
No. 2002 CW 1936 R.
Court of Appeal of Louisiana, First Circuit.
January 28, 2004.
Writ Denied April 23, 2004.
*33 Stan P. Baudin, Patrick W. Pendley, Plaquemine, Counsel for Plaintiffs/Applicants Wade Clark, et al.
Geneva Landrum, Baton Rouge, Counsel for Defendant/Relator State of Louisiana, Department of Revenue.
Before: DOWNING, GAIDRY, and CIACCIO[1], JJ.
GAIDRY, J.
This class action comes to us on remand from the Louisiana Supreme Court, following its granting the application for supervisory writs of the defendant/applicant, the Secretary of the Department of Revenue of the State of Louisiana (the Department). We are directed to reconsider the application previously denied without assigned reasons and to issue this full opinion. For the reasons set forth below, we grant defendant/applicant's application for writs in part, and remand the case to the trial court for further proceedings, pending further action by the Louisiana Board of Tax Appeals.

FACTS AND PRIOR PROCEEDINGS
Plaintiffs' petition and other pleadings in the record reveal the factual context of this class action. Cajun Electric Power Cooperative, Inc. (Cajun) was a Louisiana electric cooperative which provided wholesale electric power to various other local distribution cooperatives.[2] Due largely to its investment in the River Bend nuclear plant project, which was plagued by cost overruns and other problems, Cajun filed for Chapter 11 bankruptcy relief in December 1994. During the course of the bankruptcy proceeding, Cajun continued to operate, and the Louisiana Public Service Commission (the PSC) continued to regulate its rates and service.
In 1996, the PSC conducted a ratemaking review to align Cajun's rates with its current costs. The review revealed that since the appointment of the bankruptcy trustee, Cajun had not in fact paid or accrued interest expense on its underlying debt financed primarily by the Rural Utilities Service (the RUS). Because the bankruptcy court had not determined whether continuing accrued interest was owed to the RUS during the pendency of the bankruptcy, the PSC ordered that such interest continue to be paid by the local distribution cooperatives, which in turn passed such cost on to their customers. The PSC further ordered the interest collected by Cajun to be placed in an escrow fund. State sales taxes attributable to the total charges, including the interest, continued to be remitted by Cajun to the State from November 1996 through September 1999.
*34 In September 1999, the bankruptcy proceeding was settled with the approval of the PSC. Under the terms of the settlement, two-thirds of the interest escrow fund were paid to the PSC to be refunded or otherwise dedicated to the benefit of the taxpayers, with the remaining one-third paid to the RUS.
On August 17, 2000, plaintiffs filed a "Petition for Refund of State Sales Taxes" with the Louisiana Board of Tax Appeals (the Board), naming the Department as "defendant." They styled their combined claims as a "class action," seeking refunds on behalf of the class for the sales taxes collected on the interest expense deposited in the escrow fund. According to the petition, the tax payments made by plaintiffs were not made "under protest," as authorized by La. R.S. 47:1576, et seq., and their claims were made under the Claims Against the State procedure (La. R.S. 47:1481, et seq.). There is no evidence in the record before us that either the Department or the Board has rendered a final decision or judgment as to the administrative claim asserted.
On April 19, 2001, plaintiffs initiated this litigation in the trial court as representatives of a class of taxpayers and customers of the various local distribution cooperatives, seeking virtually the identical relief claimed in the earlier claim instituted with the Board. They styled their petition as a "Petition for Payment of a Thing Not Owed and Refund of State Sales Taxes," alleging that "they have paid a thing not owed to the State of Louisiana in the form of Louisiana state sales taxes," and that they "specifically seek a refund of these Louisiana state sales taxes" imposed upon the interest "overcharge."
On June 6, 2001, the Department filed a declinatory exception urging the objections of lack of subject matter jurisdiction and lis pendens, as well as a peremptory exception raising the defense of prescription. The exceptions were set for hearing on August 12, 2002.
On August 8, 2002, shortly before the hearing on the Department's exceptions, plaintiffs filed a supplemental and amending petition, affirmatively alleging the unconstitutionality of the Claims Against the State procedure, La. R.S. 47:1481, et seq., and the unconstitutionality of La. R.S. 47:1621, et seq., and La. R.S. 47:1431, et seq., as depriving the district courts of their constitutionally-mandated original jurisdiction, among other objections.
Following the hearing, the trial court denied the Department's exceptions. The trial court did not rule upon the constitutional issues prior to rendering its judgment denying the exceptions. The Department thereupon sought supervisory and remedial writs from this court, which were denied. The Louisiana Supreme Court granted writs and remanded this case to this court for a full opinion after further briefing and argument. Clark v. State, 03-0591 (La.4/25/03), 842 So.2d 388.

DISCUSSION
The Department's declinatory exception raised the objections of lis pendens and lack of subject matter jurisdiction. Strictly speaking, lis pendens is not applicable here, as that objection presupposes the existence of concurrent subject matter jurisdiction in two or more judicial forums. La. C.C.P. art. 531; State ex rel. Boucher v. Heard, 232 La. 499, 94 So.2d 451 (La. 1957). The Department denies that the district courts have concurrent subject matter jurisdiction in asserting the objection as to subject matter jurisdiction, yet concedes that plaintiffs may seek judicial review of the Board's decision pursuant to La. R.S. 47:1431, et seq. Regardless of its reasoning, we conclude the trial court was correct in overruling the lis pendens objection, *35 and affirm its judgment on that issue.[3]
Louisiana Constitution, article 7, ß 1 vests the power of taxation in the legislature, and La. Const. art. 7, ß 3 mandates the legislature to "provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer." To fulfill its latter obligation, the legislature has provided three remedies: (1) the Claims Against the State procedure, La. R.S. 47:1481, et seq.; (2) the Payment Under Protest procedure, La. R.S. 47:1576, et seq., and (3) the Overpayment Refund procedure, La. R.S. 47:1621, et seq.
In its exceptions, the Department characterized plaintiffs' claims as being brought pursuant to the Overpayment Refund procedure, La. R.S. 47:1621, et seq. The term "overpayment" is defined as a "payment of a tax ... when none was due, or the excess of the amount of tax ... paid over the amount due." La. R.S. 47:1621(A). The refund which plaintiffs seek clearly is for an "overpayment" within the contemplation of La. R.S. 47:1621, et seq.
The gravamen of plaintiffs' administrative claim must be determined by the character of the actual relief sought. Although plaintiffs' administrative claim was initially filed with the Board rather than directly with the Department, the Department was named as a "defendant" and served through its Secretary. The petition may therefore be viewed as the functional equivalent of a claim for refund of overpayments filed with the Department under La. R.S. 47:1621. Although plaintiffs reference the Claims Against the State procedure, La. R.S. 47:1481, et seq., in their administrative petition, they also pray for a "judgment ... awarding the plaintiffs" and other class members a refund, costs, and legal interest from the date of filing. Notably, the Claims Against the State procedure does not permit the Board to render a "judgment" on a claim brought pursuant to its provisions, but only authorizes it to either "approve" or "reject" such a claim, which is then submitted to the legislature for payment. La. R.S. 47:1481, 1483, 1486. On the other hand, La. R.S. 47:1621, et seq., including in particular La. R.S. 47:1625, authorize the Board to "render judgment" ordering the refund of tax overpayments, which judgments in turn are subject to judicial review pursuant to La. R.S. 47:1434-36. La. R.S. 47:1621, et seq., afford a viable alternative mechanism specifically directed toward the refund of tax overpayments paid voluntarily and without protest, and are not in conflict with La. R.S. 47:1481, et seq. See Pumpkin Air, Inc. v. Tarver, 95-1495, p. 3 (La. App. 3rd Cir.4/3/96), 671 So.2d 1131, 1133.
Plaintiffs oppose the declinatory exception on the grounds that the trial court has original jurisdiction of all "civil matters" under La. Const. art. 5, ß 16(A), citing Pope v. State, 99-2559 (La.6/29/01), 792 So.2d 713. Their reliance on the rationale of Pope is misplaced. It is well settled that laws regulating the collection of taxes are sui generis and constitute a system to which the general provisions of the Civil Code have little, if any, application. Church Point Wholesale Beverage Co., Inc. v. Tarver, 614 So.2d 697, 708-9 *36 (La.1993). Attempts to assert refund claims against a taxing authority under La. C.C. arts. 2299, et seq., dealing with payment of a thing not due,[4] have consistently been rejected by our courts. Atlantic Pacific Marine Corporation v. State, 94-0243, pp. 3-4 (La.App. 1st Cir.12/22/94), 648 So.2d 1069, 1070-71; Convent Marine Companies v. State, 603 So.2d 790, 794-95 (La.App. 1st Cir.1992). As unequivocally stated by the Supreme Court in Church Point Wholesale, the law does not afford a taxpayer seeking the refund of a sales tax overpayment "a remedy under Civil Code theories of recovery." Church Point Wholesale, 614 So.2d at 708-9. We conclude that the Board's jurisdiction is not circumscribed by La. Const. art. 5, ß 16(A).[5] And the district court's jurisdiction vis--vis the Board is properly governed by La. Const. art. 5, ß 16(B), which provides:
(B) Appellate Jurisdiction. A district court shall have appellate jurisdiction as provided by law. (Our emphasis.)
In Board of Elementary & Secondary Education v. Nix, 347 So.2d 147, 151 (La.1977), the Supreme Court interpreted the phrase "as provided by law," as used in La. Const. art. 8, ß 3(A), to mean "provided by legislation," citing the codal definition of "law" as "the solemn expression of legislative will." Id. (Emphasis in original.)[6] Louisiana Revised Statutes 47:1407, et seq., delineating the "jurisdiction" of the Board, its factfinding authority, and its administrative procedures, clearly fall within the broad power of taxation "vested in the legislature" by La. Const. art. 7, ß 1 and the legislature's constitutional mandate in La. Const. art. 7, ß 3 to "provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer." The substance of La. R.S. 47:1434-36 clearly establishes that district courts' jurisdiction in judicial review of "decisions or judgments" of the Board is appellate in nature. The existence of a specific statutory procedure generally implies a legislative intent that the special statutory procedure be the exclusive means of obtaining judicial review in the situations to which it applies. Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, 01-0185, p. 6 (La.10/16/01), 797 So.2d 656, 660. Thus, we hold that the trial court lacks original jurisdiction to consider the merits of plaintiffs' claims, as distinguished from the legality or constitutionality of the procedural mechanisms for assertion of those claims. See, e.g., ANR Pipeline Company v. Louisiana Tax Commission, 02-1479, pp. 5-6 (La.7/2/03), 851 So.2d 1145; Triangle Marine, Inc. v. Savoie, 95-2873 (La.10/15/96), 681 So.2d 937, involving the analogous situation of challenges to property tax assessments.[7] Whether plaintiffs' *37 claims are brought under La. R.S. 47:1621, et seq., or La. R.S. 47:1481, et seq., the trial court lacks jurisdiction to determine their merits. Accordingly, the trial court's judgment is reversed in part, and the objection of lack of subject matter jurisdiction in the declinatory exception is sustained.
We may not properly consider the constitutional issues raised by plaintiffs herein until the trial court has definitively ruled on them. Accordingly, because the validity of the claim procedure and the merits of defendant's prescription defense are intertwined with the issue of the constitutionality of the challenged statutes, it is necessary for the trial court to rule upon the constitutional issues raised.
Our ruling today renders moot the determination of the trial court's denial of the peremptory exception of prescription. Until the Board completes its factfinding function and renders its decision on that issue and others, the trial court lacks appellate jurisdiction to review the merits of this case, including the issue of prescription. See, e.g., Metro Riverboat Associates, 01-0185 at pp. 7-10, 797 So.2d at 661-62. Its judgment in that regard is accordingly vacated.
Plaintiffs' causes of action and claims for refund of the sales tax overpayments asserted in the trial court are stayed, in order to permit plaintiffs to proceed with the pending administrative remedy initially sought.[8] This case is hereby remanded to the trial court for further proceedings, including the determination of the constitutional issues raised by plaintiffs in their petition for declaratory judgment. The outcome of the determination of the constitutionality of the challenged statutes may in turn provoke reconsideration of the nature of the trial court's jurisdiction and the validity of our decision today.

DECREE
That portion of the judgment of the trial court overruling the declinatory exception's objection of lis pendens is affirmed, but that portion denying the objection of lack of subject matter jurisdiction is reversed. That portion of the trial court's judgment denying the peremptory exception of prescription is vacated. Plaintiffs' cause of action for judicial review of their causes of action and claims for refund of the sales tax overpayments is remanded, but stayed pending the conclusion of the administrative proceeding before the Secretary of the Department of Revenue and *38 the Louisiana Board of Tax Appeals bearing docket number 5313. This matter is further remanded to the trial court for determination of all remaining issues associated with plaintiffs' petition for declaratory judgment.
WRIT GRANTED, JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART, AND CASE REMANDED AND STAYED IN PART.
DOWNING, J., concurs and assigns reasons.
DOWNING, J., concurs and assigns written reasons.
I concur only in the result reached by the majority. I disagree ardently with the dicta that forms the majority's rationale and which is contradicted by the result reached. Particularly, I disagree with the majority's discussion of the district court's lack of original jurisdiction.
Louisiana Const. art. 5, ß 16A provides that except where otherwise authorized by the constitution and except in workers' compensation matters, the "district court shall have original jurisdiction of all civil and criminal matters." "In In the Matter of American Waste, 588 So.2d 367, 372 (La.1991), and Moore v. Roemer, 567 So.2d 75, 81 (La. 1990), the Louisiana supreme court indicated that `civil matters' are those that have been traditionally adjudicated in the district courts, such as the adjudication of disputes between private parties resulting in money judgments affecting only those parties. `Civil matters' are those where private citizens have historically had the independent right to bring suit in the district court for relief. American Waste, 588 So.2d at 372." Hull v. Stalder, 00-2730, p. 5 (La.App. 1 Cir. 2/15/02), 808 So.2d 829, 830. The majority opinion at note 7 recognizes that "there is historic authority for the exercise of original jurisdiction by trial courts in tax refund and assessment claims ...," yet the opinion "hold[s]" that the trial court lacks original jurisdiction to consider the merits of the plaintiffs claims. Further, the opinion then seems to suggest incorrectly and without authority that the existence of appellate jurisdiction over agency decisions in the district court under La. Const. art. 5, ß 16B somehow precludes the existence of original jurisdiction under La. Const. art. 5, ß 16A.
I do not suggest that the trial court should exercise whatever original jurisdiction it possesses, and it may abuse its discretion in doing so. See CLECO v. Louisiana Public Service Commission, 601 So.2d 1383, 1388 (Lemmon, J., concurring). Nor do I challenge the jurisdiction of the Louisiana Tax Commission or the propriety of its exercising jurisdiction. However, I do resist the tendency to categorize cases into constitutional pigeonholes. We need not do that.
I believe the correct resolution of this matter is founded in the doctrine of primary jurisdiction. "The doctrine is designed to guide a court in determining whether to refrain from exercising its own jurisdiction in a particular case so that an administrative agency with special competence may first decide an issue presented, laying the foundation for a judicial decision or possibly making judicial proceedings unnecessary." Id. And indisputably in the matter before us, the Tax Commission has special competence in the area of taxation. Clearly then, the Tax Commission is in a better position to evaluate plaintiffs claims and the district court should defer to it.
We need not decide today whether the La. Const. art. 7, ß 3 provision for recovery of illegal taxes precludes a district court from having original jurisdiction over *39 all other tax disputes. As Justice Lemmon stated in CLECO:
In some cases it is very difficult to determine whether the relief demanded by the parties presents issues for court resolution or agency resolution, and some cases present both. Under such circumstances the court in which an exception of lack of subject matter jurisdiction is filed may consider the doctrine of primary jurisdiction.
CLECO, 601 So.2d at 1388.
The majority opinion correctly grants the exception of lack of subject matter jurisdiction in part and stays the proceedings in the district court. And by staying the "causes of action and claims for refund of sales tax overpayments" in district court, rather than dismissing them, the majority recognizes the district court's subject matter jurisdiction. Accordingly, I concur in the result only.
NOTES
[1] The Honorable Philip Ciaccio, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The local distribution cooperatives sought to intervene in this action, but their motions to intervene were denied by the trial court. The trial court's judgment in that regard was affirmed by this court in Clark v. State, 02-0703 (La.App. 1st Cir.5/9/03), 849 So.2d 700.
[3] The trial court may have been technically correct in overruling the lis pendens objection on the grounds that the Board is not a "court" for purposes of La. C.C.P. art. 531, but we do not resolve the issue on that basis. Considered in its context, it is plain that the alleged procedural defect forming the basis of the lis pendens objection is actually grounded in plaintiffs' failure to exhaust their administrative remedies sought in their prior claim with the Board. The true substance of this objection is therefore prematurity, rather than lis pendens.
[4] Prior to January 1, 1996, the effective date of present articles 2299-2305, payment of a thing not due was governed by prior La. C.C. arts. 2301-13.
[5] The Louisiana Supreme Court has never precisely articulated the scope of "public law." But it has suggested that matters in which the State is a party and administers a system involving "public rights," such as environmental law violations and unemployment compensation disputes, are matters of "public law." Moore v. Roemer, 567 So.2d 75, 80-81 (La.1990). In Pope, the Supreme Court held that the prisoner's tort action at issue clearly did not involve "public law," and therefore chose to "reserve discussion of that issue for another day." Pope, 99-2559 at pp. 10-11 n. 14, 792 So.2d at 719 n. 14.
[6] At the time Nix was decided, La. C.C. art. I read, "Law is a solemn expression of legislative will." It was subsequently amended by Acts 1987, No. 124, ß 1, to read "The sources of law are legislation and custom."
[7] We undertake this discussion of the constitutional basis of the respective subject matter jurisdiction of the trial court and the Board solely for the purpose of ruling on the exceptions at issue, as we were directed to do by the supreme court. In that regard, we note that although there is historic authority for the exercise of original jurisdiction by trial courts in tax refund and assessment claims, virtually all of those cases arose prior to the enactment of the source provisions of the remedy statutes at issue, and prior to the adoption of the current constitution. We express no position on the due process challenges upon which the trial court must first rule.
[8] Arguably, the refund claims ought to be dismissed without prejudice. See La. C.C.P. art. 932(B). But as the trial court here unquestionably retains jurisdiction to determine the related declaratory judgment claims, we conclude the better procedural disposition as to the refund claims is a stay of their determination by the trial court, pending the conclusion of the administrative adjudication, under our inherent authority and mandate to render "any judgment which is just, legal, and proper upon the record on appeal." La. C.C.P. art. 2164. For practical purposes, this result is virtually equivalent to that which would obtain should we have concluded that the trial court possessed original jurisdiction over the refund claims, but subject to the "primary jurisdiction" doctrine. See, e.g., Central Louisiana Electric Company, Inc. v. Louisiana Public Service Commission, 601 So.2d 1383, 1388 (Lemmon, J., concurring).