Judgment rendered October 1, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,453-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JOHN STEWART GENTRY AND               Plaintiffs-Appellants
DIANA GENTRY BREEN
DOING BUSINESS AS
RICHLAND FARM
PARTNERSHIP

versus

NORTHEAST LOUISIANA                   Defendant-Appellee
ELECTRIC POWER
COOPERATIVE, INC.

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Richland, Louisiana
Trial Court No. 46,023

Honorable Stephen Gayle Dean, Judge

* * * * *

JOHN C. LAIRD, APLC                   Counsel for
By: John Carlton Laird               Plaintiffs-Appellants

BREITHAUPT, DUBOS
& WOLLESON, LLC
By: Michael Lee DuBos
    Adam Roger Karamanis
    K. Lamar Walters, III

JAMES WILLIS BERRY                    Counsel for
                                     Defendant-Appellee

COOK, YANCEY, KING
& GALLOWAY, APLC
By: Herschel Erskine Richard, Jr.
    John Tucker Kalmbach
    David Jonathan Hemken
    William Drew Burnham

KEAN MILLER LLP                      Counsel for
By: Troy John Charpentier           Defendant-Appellee,
                                     Energy Transfer Crude
                                     Oil Company, LLC

* * * * *

Before COX, HUNTER, and MARCOTTE, JJ.

**HUNTER, J.**

Plaintiffs, John Stewart Gentry and Diana Gentry Breen, d/b/a Richland Farm Partnership, appeal a district court's judgment sustaining exceptions of lack of subject matter jurisdiction, no cause of action, and no right of action filed by defendant, Northeast Louisiana Electric Power Cooperative, Inc. For the following reasons, we affirm in part, reverse in part, and remand to the district court for further proceedings.

## FACTS

Plaintiffs, John Stewart Gentry and Diana Gentry Breen, d/b/a Richland Farm Partnership, are the owners of 260 acres of farmland located at the corner of Louisiana Highway 183 and Mitchner Road in Richland Parish. Northeast Louisiana Electric Power Cooperative, Inc. ("NELPCO") is an electrical power cooperative which supplies electricity to individuals, families, and businesses in Northeast Louisiana.

On March 21, 1950, H. A. Gentry, plaintiffs' predecessor in title, granted to NELPCO a right of way servitude to "place, construct, operate, repair, maintain, relocate, and replace" an electric transmission or distribution line "including all anchors, anchor stubs and guy wires necessary or advisable for the construction, operation, repair, and maintenance of the said electric transmission or distribution in system[.]" The servitude further provided, "In granting this easement, it is understood that at pole locations, only a single pole and appurtenances will be used, and that the location of the poles will be such as to form the least possible interference to farm operations." Thereafter, NELPCO constructed, and has operated and maintained an electrical power line ("original Distribution Line") to distribute electricity to its customers. The distribution circuit was

suspended along a line of wooden poles above and across plaintiffs' property (along La. Hwy 183 and Mitchner Road). For decades, the electrical system was sufficient to meet the needs of the customers in the area.

In 2014, Energy Transfer Crude Oil Company, L.L.C. ("ETC"), began constructing a new crude oil pipeline pumping facility in Epps, Louisiana. The new facility requires a high voltage system, *i.e.*, 115-kv, to supply electricity to two 6,000 horsepower pumps. In 2015, NELPCO and ETC entered into a "Cost Reimbursement Agreement," whereby NELPCO would construct, own, and operate the electrical power system upgrades necessary to supply ETC's facility with high voltage electricity. The reimbursement agreement described the estimated costs for the design and construction of the project, and ETC agreed to reimburse NELPCO for the costs. The parties specifically agreed that NELPCO would own the facilities, and ETC would own and be responsible for its own equipment and fixtures.

The plans for the services to ETC and the Agreement to Purchase Power were submitted to the Louisiana Public Service Commission ("LPSC"). The LPSC approved the service and issued a special tariff to NELPCO for the sale of electricity to ETC's facility. Pursuant to the tariff, NELPCO agreed to "deliver services to the meter on [ETC's] premises."

The upgraded system, which was completed in 2016, begins at a new NELPCO electric substation built in Holly Ridge, Louisiana, ends at ETC's facility in Epps, Louisiana, and it runs along the route of the existing right of way on plaintiffs' property. The distance between ETC's facility, where the meter is located, and NELPCO's substation is 13 miles long. The relevant upgrades included constructing new and taller metal power poles, which are interspaced by shorter wooden power poles. Regarding plaintiffs' property,

2

at some locations, the new poles were placed farther away from the highway, some of which are as much as 12 feet from the centerline of the old wooden poles. However, even with the addition of new metal poles, the upgraded system remains a "single-pole system" and does not utilize "H frames" or multi-footed utility towers.

On June 29, 2016, after construction of the new system commenced, NELPCO and ETC entered into an Agreement for Purchase of Power. Under this agreement, NELPCO would sell and deliver to ETC high-voltage electricity necessitated by its pumping station in Epps. The rate schedule was submitted to the LPSC and was later incorporated into the tariff imposed by the LPSC. In accordance with the agreement and the tariff, the "point of delivery" for NELPCO's electrical services to ETC was the meter installed at NELPCO's substation in Holly Ridge.

On September 29, 2016, NELPCO began using the upgraded system to deliver high-voltage electricity to ETC's facility in Epps, and the system has been operational since that date. According to NELPCO, plaintiffs were aware of its activities, and its general manager remained in contact with plaintiff, John Gentry, about the project. On August 16, 2016, after construction was completed, NELPCO's general manager met with Gentry and his farmer, and the farmer executed a receipt and release for damage to the property caused by the construction, including "crop damages" and "land damages."

On October 20, 2017, plaintiffs filed a petition for declaratory judgment, injunctive relief, and damages. According to plaintiffs, the upgraded system is separate and distinct from the original distribution line, and the ETC/NELPCO plan required the original distribution line to be

replaced by a new 13.8kv distribution line ("New Distribution Line"). The New Distribution Line and the Transmission Line require separate poles and facilities, are separately metered, carry different loads (13.8kv, as opposed to 115kv), are subject to different standards, serve different functions, and service different customers. Additionally, plaintiffs assert that the New Distribution Line replaced the Original Distribution Line that distributed electric power to NELPCO customers throughout the network. Contrarily, the new Transmission Line only serves one customer, ETC, and delivers electricity at a higher voltage than the Distribution Line. Consequently, the actions of ETC and NELPCO have resulted in the construction of two lines (the New Distribution Line and the Transmission Line), rather than one, on plaintiffs' property.

Plaintiffs also alleged that they did not authorize NELPCO to install the new transmission system, and they did not agree to a new right of way easement or servitude allowing NELPCO to enter their property to install a new system. Plaintiff also alleged that they "were not advised that new and significantly large and obstructive aluminum poles anchored in concrete were going to be installed and used to construct a high-voltage power transmission system that runs through and over the top of [their] property that significantly impaired [their] farming operations in direct violation of the right of way Easement."

Plaintiffs sought the following: (1) a judgment declaring the servitude invalid; (2) a judgment declaring NELPCO's actions as "unauthorized taking and expropriation"; (3) a mandatory injunction requiring NELPCO to remove the new power lines; (4) a permanent injunction precluding NELPCO from installing any structures on plaintiffs' property; (5) damages

4

for the loss of use of plaintiffs' property; (6) damages for expenses incurred as a result of having to use "altered farming practices" due to the violation of the right of way easement; (7) damages for diminished future yields from altered farming practices; (8) damages for diminished property value; (9) progressive damages caused by NELPCO's "continuous trespass" until all lines, poles, and systems are removed; and (10) "such other equitable and monetary relief for which [plaintiffs] are entitled."[1]

In 2021, NELPCO and ETC amended the Agreement to Purchase Power to address the location of the meter. The amendment provided that the meter would "serve as the metering point" for ETC, provided that ETC "is the sole load" on the transmission line. The amendment also provided that NELPCO "shall retain title to all power and energy up to the point of delivery where [NELPCO's] facility interconnects with [ETC's] facility." Under the amendment, ETC would bear any line loss between the Holly Ridge substation and the Epps pumping facility.

On April 30, 2024, plaintiffs filed a third amending petition based on the special tariff provisions issued to NELPCO by the LPSC relating to the

---

[1] ETC filed a crossclaim, alleging NELPCO was the owner of the facilities, and the parties agreed that NELPCO would be responsible for "determining whether its existing rights of way would allow for the construction of the proposed transmission line and for obtaining any additional rights necessary to do so." Therefore, ETC alleged that if it was liable because of NELPCO's failure to obtain rights, then it was entitled to recover any such amounts from NELPCO.

In 2021, the parties filed cross-motions for summary judgment; however, at the hearing on the motions, plaintiffs requested and were granted a continuance to allow for additional discovery. In its motion, NELPCO argued it acted within its rights under the servitude agreement. In the alternative, NELPCO argued the claims were prescribed under La. R.S. 12:428 because the upgraded power line was already in use on the property for more than one year before plaintiffs filed the lawsuit. In April 2021, plaintiffs filed a second amended petition, in which they challenged the constitutionality of La. R.S. 12:428. A hearing on the cross-motions was reset for 2022.

Before the hearing on the cross-motions could be conducted, plaintiffs' original counsel passed away, and the parties agreed to continue the hearing. In January 2024, plaintiffs obtained new counsel, and the trial was set for December 2024.

5

electrical services provided to ETC. Plaintiffs alleged as follows: (1) ETC should be declared the owner of the upgraded electric system due to the physical location of the meter; (2) the agreements between NELPCO and ETC are invalid (relating to the electrical service and the location of the meter); and (3) NELPCO and ETC violated the tariff provisions and "jointly, knowingly and unlawfully conspired to plan, construct and install a new (second) electric power transmission system . . . on plaintiffs' property despite having no right-of-way agreement with Plaintiffs that would allow them to do so."

More specifically, plaintiffs alleged that the tariff provisions provided that the meter was the "point of delivery." The provisions further provided, "All facilities, including lines, wiring, apparatus and services risers, attached to buildings, temporary meter poles and individual underground services beyond the point of delivery shall be furnished, installed, owned and maintained by the member," *i.e.*, ETC. Plaintiffs asserted that notwithstanding the Cost Reimbursement Agreement and the Agreement for Purchase of Power between NELPCO and ETC, pursuant to the tariff provisions, all facilities constructed beyond the point of the meter, including those constructed on plaintiffs' property, were owned by ETC, not NELPCO.

In response to the third amended petition, NELPCO filed a peremptory exception of lack of subject matter jurisdiction, arguing the LPSC is the agency vested with broad authority to regulate electric cooperations; therefore, only the LPSC can interpret and enforce its general and special tariffs. Alternatively, NELPCO filed a peremptory exception of no cause of action, arguing the law does not grant a private cause of action to enforce LPSC tariffs, and any aggrieved party can file a petition with the

6

LPSC. Furthermore, NELPCO filed a peremptory exception of no right of action, arguing plaintiffs did not have a right of action because they were not a party to the contracts between NELPCO and ETC.

Following a hearing, the district court sustained the exceptions and dismissed the claims asserted in the third amended petition with prejudice. The court adopted the memorandum filed by NELPCO as its reasons for judgment. The claims asserted in plaintiffs' original, first, and second amended petitions remain pending.

Plaintiffs appeal.

**DISCUSSION**

Plaintiffs contend the district court erred in concluding it does not have subject matter jurisdiction over the claims relating to the validity of the contracts between NELPCO and ETC regarding the LPSC's tariff rules. Plaintiffs argue they have asserted claims of trespass, which involve issues of ownership and the interpretation of contracts, and the LPSC does not have jurisdiction over these matters. Plaintiffs maintain the LPSC, as a regulatory body, has limited jurisdiction over matters dealing with utility rates and the regulation of services provided by public utilities. Plaintiffs also assert the tariff provisions confirm that the meter is the point of delivery for NELPCO's Transmission Line, and in this case, the customer, ETC, owns the facilities (wires, appliances, devices, or apparatus of any kind or characteristic) on its side of the point of delivery, except the meter itself. Moreover, the tariff provisions expressly prohibit the amendment, modification, alteration, or waiver of its terms, and they prohibit NELPCO from entering into any agreements that conflict with the tariff provisions.

7

Jurisdiction over subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2. The district courts are vested with "original jurisdiction of all civil and criminal matters" under La. Const. art. V, § 16(A), unless otherwise authorized in the constitution. *Central La. Elec. Co. v. La. Public Serv. Comm'n*, 601 So. 2d 1383 (La. 1992); *Frith v. Sw. Ouachita Waterworks, Inc.*, 50,749 (La. App. 2 Cir. 10/12/16), 207 So. 3d 1121.

Jurisdiction over public utilities in general and rates in particular is vested in the LPSC under La. Const. art. IV, § 21(B). *Daily Advertiser v. Trans-La., a Div. of Atmos Energy Corp.*, 612 So. 2d 7 (La. 1993); *Frith v. Sw. Ouachita Waterworks, Inc.*, *supra*. La. Const. art. IV, § 21(B) provides:

> [The LPSC] shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.

La. Const. art. IV, § 21(B) affords the LPSC expansive, independent, and plenary regulatory powers over public utilities. *Entergy La., LLC v. Louisiana Pub. Serv. Comm'n*, 16-0424 (La. 3/15/17), 221 So. 3d 801; *Gulf States Utilities Co. v. La. Public Serv. Comm'n*, 92-1185 (La. 3/17/94), 633 So. 2d 1258. That broad regulatory power comprises the right to exercise all necessary power and authority over public utilities for the objective of setting and regulating rates charged or to be charged, and service furnished by those public utilities. *Gulf States Utilities Co.*, *supra*.

The fact that one party is a public utility does not consequentially divest the district court of original jurisdiction. *Frith v. Sw. Ouachita*

8

*Waterworks, Inc.*, *supra*; *Town of Sterlington v. Greater Ouachita Water Co.*, 49,315 (La. App. 2d Cir. 10/1/14), 149 So. 3d 952, *writ denied*, 14-2258 (La. 1/9/15), 157 So. 3d 1111. However, that a party is a public utility makes La. Const. art. IV, § 21(B) possibly applicable. *Id.*

The LPSC "shall exercise all necessary power and authority over any . . . electric light, heat, power, . . . or other local public utility for the purpose of fixing and regulating the rates charged or to be charged by and service furnished by such public utilities." La. R.S. 45:1163(A); *Town of Sterlington v. Greater Ouachita Water Co.*, *supra*. Further, the power, authority, and duties of the LPSC "shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by such public utility[.]" La. R.S. 45:1164(A). Additionally, La. R.S. 45:1176 provides:

> The [LPSC] and any parochial or municipal body having similar powers in the fixing of just and reasonable rates charged or to be charged by public utilities, shall investigate the reasonableness and justness of all contracts, agreements and charges entered into or paid by such public utilities with or to other persons, whether affiliated with such public utilities or not, and shall have the power to disallow as an operating expense of any public utility such part of the amount so paid by it under any such contract or agreement as the commission or parochial or municipal body may find, after hearing, to be unjust or unreasonable and designed for the purpose of concealing, abstracting or dissipating the net earnings of the public utility.

In *Central La. Elec. Co. v. La. Public Serv. Comm'n*, *supra*, the Court stated as follows:

> [T]he [L]PSC has constitutional and statutory jurisdiction over subject matters which principally involve the right to fix and regulate rates charged by and services furnished by public utilities. The Legislature has never provided by law for the [L]PSC to exercise jurisdiction over other subject matters and areas of litigation in which public utilities are involved, such as

9

> tort actions and contract disputes. It is therefore necessary at the outset to determine the relief demanded by all parties in order to resolve the subject matter jurisdiction issue.

*Id.* at 1386; *See also*, *Conoco, Inc. v. La. Pub. Serv. Comm'n*, 520 So. 2d 404 (La. 1988).

In the instant case, it is undisputed that NELPCO is a public utility regulated by the LPSC. Further, tariffs on file with the LPSC govern the services and rates provided and charged by NELPCO. *See*, La. R.S. 45:1161 *et seq*. In 2016, the LPSC approved the tariff provisions based upon the agreements between NELPCO and ETC. The tariffs directly relate to the electrical services provided to ETC "for the objective of regulating rates charged or to be charged, and service furnished by" NELPCO.

Based on the foregoing, we find that the issues pertaining to whether the agreements between NELPCO and ETC violate the tariff provisions approved by the LPSC are within the exclusive jurisdiction of the LPSC, as those issues involve electrical services provided by NELPCO and the LPSC's "right to exercise all necessary power and authority over public utilities for the objective of setting and regulating rates charged or to be charged, and service furnished by, those public utilities." *See*, La. R.S. 45:1163(A); *Gulf States Utilities Co.*, *supra*. Any claims regarding alleged violations of the tariff provisions must be filed with the LPSC. Consequently, we find the district did not err in sustaining the exception of lack of subject matter jurisdiction as it pertains to the alleged violation of the tariffs.

Plaintiffs further contend the trial court erred in sustaining the exception of no right of action with respect to the validity of the Cost Reimbursement Agreement and the Agreement for Purchase of Power

10

between NELPCO and ETC. According to plaintiffs, they have a vested interest and a valid cause of action under La. C.C.P. art. 1872 because the agreements affect their property rights.

Only a person having a real and actual interest to assert may bring an action. La. C.C.P. art. 681; *Thornton v. Carthon*, 47,948 (La. App. 2 Cir. 5/15/13), 114 So. 3d 554, *writ denied*, 13-785 (La. 11/1/13), 125 So. 3d 435; *Wagoner v. Chevron USA Inc.*, 45,507 (La. App. 2 Cir. 8/18/10), 55 So. 3d 12, *writ denied*, 10-2773 (La. 3/2/12), 83 So. 3d 1032; *Skannal v. Bamburg*, 44,820 (La. App. 2 Cir. 1/27/10), 33 So. 3d 227, *writ denied*, 10-0707 (La. 5/28/10), 36 So. 3d 254. A person interested under a written contract or other writing constituting a contract, or whose rights are affected by a contract, may have determined any question of construction or validity arising under the contract and obtain a declaration of rights, status, or other legal relations thereunder. *See*, La. C.C.P. art. 1872.

A peremptory exception of no right of action is used to show that a plaintiff has no legal right or interest in enforcing the matter asserted, based upon facts and evidence submitted. La. C.C.P. arts. 681 and 927; *Campbell v. Nexion Health at Claiborne, Inc.*, 49,150 (La. App. 2 Cir. 10/1/14), 149 So. 3d 436; *Thornton*, *supra*. An exception of no right of action is a peremptory exception, the function of which is "to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 923; *Wagoner*, *supra*.

An appellate court reviews a trial court's ruling granting an exception of no right of action de novo. *Badeaux v. Sw. Computer Bureau, Inc.*, 05-0612 (La. 3/17/06), 929 So. 2d 1211; *Young v. Horseshoe Ent., Ltd. P'ship*, 55,749 (La. App. 2 Cir. 9/4/24), 399 So. 3d 768, *writ denied*, 24-01221 (La.

11

12/27/24), 397 So. 3d 1221. The exception presents a question of law, requiring a de novo review by appellate courts. La. C.C.P. art. 923; *City of New Orleans v. Board of Directors of Louisiana State Museum*, 98-1170 (La. 3/2/99), 739 So. 2d 748; *In re: Succession of Harrison*, 48,432 (La. App. 2 Cir. 11/8/13), 129 So. 3d 681, *writ denied*, 14-0273 (La. 4/4/14), 135 So. 3d 1185. The burden of proof establishing the exception of no right of action is on the exceptor. La. C.C.P. art. 923; *City of New Orleans*, *supra*; *Succession of Harrison*, *supra*.

In the instant case, plaintiffs concede that they are not parties to the agreements between NELPCO and ETC, and they do not derive any benefit from the agreements. The record demonstrates that ETC is the sole consumer of the upgraded electrical system, and it assumed all costs of construction. According to plaintiffs, they seek "an interpretation of the [agreements] and a declaration of invalidity of those provisions . . . because those provisions directly and adversely affect Plaintiffs' rights to the use and enjoyment of their property rights."

Regardless of how plaintiffs characterize their alleged interests in the agreements, it is undisputed that plaintiffs are not parties to the agreements between NELPCO and ETC. Accordingly, we find the district court did not err in concluding plaintiffs do not have a right of action or cause of action to seek a declaration of *invalidity* of the Cost Reimbursement Agreement and the Agreement for Purchase of Power.

Nevertheless, we find the issue of whether NELPCO or ETC is the owner of the facilities and lines involves contractual interpretation and does not fall within the purview of rates or services of a public utility. As the landowners affected by the upgraded system, plaintiffs have an interest in

ascertaining who owns the facilities and lines, in light of the contractual agreements between NELPCO and ETC. We find the district court has original jurisdiction over the issue of contract interpretation, pursuant to La. Const. art. V, § 16(A) . Accordingly, we find the district court erred in sustaining the exception of lack of subject matter jurisdiction and the exceptions of no right of action and no cause of action regarding the issue of the ownership of the lines and facilities.

## CONCLUSION

For the reasons expressed herein, we affirm the district court's judgment sustaining the exception of lack of subject matter jurisdiction as it relates to the tariffs and sustaining the exception of no cause of action and no right of action pertaining to the validity of the agreements between NELPCO and ETC. We reverse the district court's judgment sustaining the exceptions of lack of subject matter jurisdiction, no cause of action, and no right of action as they relate to the contractual agreements pertaining to the ownership of the lines and electrical facilities. Costs of the appeal are assessed equally to the parties.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**