905 So.2d 314 (2005)
CITY OF NEW ORLEANS' DEPARTMENT OF FINANCE in Its Capacity as the Orleans Parish Tax Collector
v.
TOURO INFIRMARY.
City of New Orleans' Department of Finance in Its Capacity as the Orleans Parish Tax Collector
v.
Touro Infirmary Hospital.
Nos. 2004-CA-0835, 2004-CA-0951, 2004-CA-1204.
Court of Appeal of Louisiana, Fourth Circuit.
April 27, 2005.
Rehearing Denied May 31, 2005.
*316 Lawrence Blake Jones, Robert J. Ellis, Jr., Scheuermann & Jones, New Orleans, Richard G. Barham, Barham and Warner L.L.C., Shreveport, Sherry S. Landry, City Attorney, Evelyn F. Pugh, Chief Deputy City Attorney, Deborah M. Henson, *317 Assistant City Attorney, Penya M. Moses-Fields, Assistant City Attorney, New Orleans, Counsel for Appellant, City of New Orleans, Department of Finance, Bureau of Revenue.
James M. Garner, Peter L. Hilbert, Jr., Steven I. Klein, Timothy B. Francis, Sher Garner Cahill Richter Klein McAlister & Hilbert, L.L.C., New Orleans, Counsel for Defendant/Appellee, Touro Infirmary.
Court Composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. MCKAY, Judge MICHAEL E. KIRBY, Judge LEON A. CANNIZZARO, Jr., Judge ROLAND L. BELSOME.
CANNIZZARO, J.
This case is a consolidation of three separate appeals from several judgments that were rendered in a summary tax proceeding initiated by the City of New Orleans' Department of Finance in its capacity as the Orleans Parish Tax Collector (the "City") to collect sales taxes assessed against Touro Infirmary. All of the judgments that are being appealed arose from a single proceeding in the district court.

FACTS AND PROCEDURAL HISTORY
In May of 2001, the City gave Touro written notice that an examination of Touro's books and records would be conducted on behalf of the City by the accounting firm of Pailet, Meunier, and LeBlanc, L.L.P. in connection with the enforcement and collection of local sales and use taxes and local occupational license taxes. The audit covered the calendar years 1998 through 2002.[1] The auditors prepared a report of their findings which showed that Touro owed $443,928.07 in taxes, not including interest, penalties, audit costs, or attorneys' fees.
The City sent by certified mail to Gary M. Stein, President and Chief Executive Officer of Touro, a Notice dated November 4, 2003, informing Touro of a proposed tax assessment. The total amount of the proposed assessment was $749,268.84, which included $443,928.07 in sales and use taxes, $177,238.37 in interest, $106,716.40 in penalties, and $21,386.00 in audit costs.
Touro sent a letter of protest dated January 7, 2004, to the City's tax collection administrator at the law firm of Scheuermann & Jones protesting the rate of tax assessed on the purchase of medical device items prior to March of 2001, the assessment of sales or use tax on property that had become part of Touro's immovable structure, and the imposition of use tax on certain transactions that were listed in a schedule attached to the letter. Additionally, Touro claimed that it should not pay the assessed sales or use tax for the year 1998, because an unauthorized Touro employee had signed a waiver of prescription as to those taxes, and Touro also claimed that it should not pay the assessed audit costs. Touro further claimed that it should not pay sales or use taxes that have been assessed by the City to medical device vendors that were audited or assessed taxes for the audit period covered in the Touro audit. Finally, Touro requested a waiver of any penalties on any net tax due.
In the letter of protest Touro also claimed an offset in an amount greater than the proposed assessment by the City. Touro claimed that it had erroneously paid $356,611.10 in sales and use taxes on certain items during the time period covered by the City's audit. Touro's claim for a *318 refund of certain taxes already paid as well as the reduction in the proposed assessment that Touro claimed was required would result in a net overpayment of taxes by Touro. Therefore, Touro requested a tax refund in its letter of protest.
After Touro and the City were unable to resolve the issues raised by Touro in its notice of protest, the City filed suit on February 17, 2004, to collect the taxes assessed against Touro. The City also filed a motion to have its suit tried in a summary proceeding pursuant to La. R.S. 47:337.61[2]. That statute provides for the collection of taxes through a summary proceeding for hearing and determining claims by or on behalf of a taxing authority. The stated purpose of the statute is to facilitate and expedite the determination and trial of tax claims brought by or on behalf of a taxing authority.
Pursuant to paragraph (2) of La. R.S. 47:337.61, "[a]ll defenses, whether by exception or to the merits, made or intended to be made ... must be presented at one time and filed in the court of original jurisdiction prior to the time fixed for the hearing, and no court shall consider any defense unless so presented and filed." Paragraph (2) further provides that it "shall be construed to deny to any court the right to extend the time for pleading defenses . . . ." On March 2, 2004, Touro filed a pleading entitled "Exception of Prematurity and/or No Cause of Action, Additional Exceptions of No Cause of Action and Exception of Prescription as Alternative to Reconventional Demand, Incorporated Memorandum in Support of Same, Answer and Reconventional Demand." The reason Touro filed this all-purpose document was because of the requirement in paragraph (2) of La. R.S. 47:337.61(2) that all defenses must be presented at one time. If this procedure is not followed, paragraph (2) prohibits the court from considering any separately filed defense. On March 12, the City filed an answer to Touro's reconventional demand for a refund of Touro's claimed overpayment of certain sales and use taxes.
Paragraph (1) of La. R.S. 47:337.61 provides that a hearing in a summary proceeding to collect taxes "shall always be tried or heard by preference ... at such time as may be fixed by the court, which shall be not less than two nor more than ten days after notice to the defendant or opposing party." Pursuant to this provision, a hearing was originally scheduled in this case for February 23, 2004[3], but was continued until March 3, 2004. No hearing was held then either. Finally, there was a hearing held on April 6, 2004, when a number of exceptions and motions that had been filed were considered. Ultimately, the trial in this case began on April 26, 2004, and ended on May 3, 2004.
The record is replete with motions, exceptions, and memoranda filed by both Touro and the City. Consequently, the trial court rendered a number of judgments in this case from which three separate appeals were filed. We have consolidated these appeals.

Judgment Rendered April 16, 2004 ("Judgment No. 1")
At a hearing on April 6, 2004, the trial court heard the following motions and exceptions:

*319 Motions and Exceptions Filed by Touro

1. Exception of prematurity or no cause of action, relating to alleged defects in the City's notice to Touro of the tax audit;
2. Exception of no cause of action, relating to the penalties assessed by the City against Touro;
3. Exception of no cause of action, relating to the assessment of the costs of the tax audit to Touro;
4. Exception of no cause of action, relating to the City's alleged failure to correctly compute the tax owed by not offsetting the taxes owed with Touro's claim for a refund for overpayment of taxes;
5. Exception of prescription, relating to an allegedly unauthorized waiver of prescription for taxes due in 1998;
6. Motion to dismiss the suit against Touro; and
7. Exception of no cause of action and no right of action, improper use of a summary proceeding, and insufficiency of service of process;

Motions Filed by the City
1. Motion to Strike Touro's responsive pleadings as untimely filed; and
2. Motion in Limine.
In a judgment dated April 16, 2004, the trial court granted in part and denied in part the City's motion to strike Touro's responsive pleadings by holding that all pleadings filed by Touro after March 3, 2004, the date all parties agreed was the date set for the hearing in this case, were untimely in light of the statutory requirement in paragraph (2) of La. R.S. 47:337.61 that all defenses in a summary tax proceeding must be filed prior to the time fixed for the hearing. The City's motion in limine was denied as moot, and all of Touro's motions and exceptions were denied.

Judgment Rendered April 26, 2004 ("Judgment No. 2")
On April 23, 2004, the trial court heard several motions that had been filed by Touro. Among the motions was a motion by Touro requesting that all of the City's exceptions to Touro's reconventional demand be waived. This motion was granted. Additionally, the City's answer to Touro's reconventional demand was stricken as untimely, because it was filed after the March 3, 2004 filing deadline imposed by the trial court. Then the trial court granted Touro's motion for judgment on the pleadings with respect to Touro's reconventional demand. The trial court held that the City was liable to Touro for the following:
1. a refund of all sales and use taxes erroneously paid by Touro in 1998, 1999, 2000, 2001, and 2002, on the cost of immovable property and the cost of services to immovable property in the amount of $443,992.58, which were payments identified in a claim for a refund filed with the City on February 27, 2004;[4]
2. a refund of all sales and use taxes paid on purchases, leases, and rentals of tangible personal property under the provisions of Medicare for the years 1998, 1999, 2000, 2001, and 2002 in the amount of $469,068.08, which were payments identified in a claim for a refund filed with the City on March 2, 2004; and
3. interest on the refunds.
Because the trial court judge held that the City's answer to Touro's reconventional demand was filed after March 3, 2004, *320 the date set for the hearing in the City's summary tax proceeding, all of the City's defenses to the reconventional demand were stricken from the record. Therefore, the City was unable to present any evidence to rebut Touro's claims for a refund. The trial court judge relied on paragraph (2) of La. R.S. 47:337.61, which requires all defenses in a summary tax proceeding to be filed "prior to the time fixed for the hearing."

Judgment Rendered May 14, 2004 ("Judgment No. 3")
On April 23, 2004, a hearing on several motions was held. The trial court judge granted the City's motion to strike untimely filed responsive pleadings filed by Touro and denied Touro's motion to strike all of the City's witnesses not presented for deposition, Touro's motion to deem waived all of the City's dilatory exceptions, and Touro's motion to preclude the City from raising any new issues. .

Judgment Rendered May 7, 2004 ("Judgment No. 4")
On April 26, 2004, the trial court heard the City's motion to reconsider the trial court's ruling striking the City's answer to Touro's reconventional demand and the City's exception of no right of action with respect to the reconventional demand. Both motions were denied.

Judgment Rendered May 14, 2004 ("Judgment No. 5")
This judgment was rendered on the trial of this case that began on April 23, 2004, and ended May 3, 2004. The trial court's judgment held as follows:
1. The City's claims for unpaid sales and use taxes were granted with respect to $307,844.96 in unpaid sales and use taxes that were assessed against Touro and not contested by Touro.
2. The City's claims for $37,325.72 in unpaid sales and use taxes that were assessed against Touro and contested by Touro were denied.
3. The City's claims against Touro for penalties on its unpaid sales and use taxes were denied. This holding was based on the trial judge's finding that under La. R.S. 47:1602, no penalty is due for the underpayment of taxes unless the taxpayer fails to file a timely return and fails to pay the amount due that is shown on the return.
4. The City's claims against Touro for audit costs were granted pursuant to section 150-707 of the New Orleans Code (the "City Code") in the amount of $21,386.00.;
5. The City's claims against Touro for attorneys fees were granted in the amount of $47,305.66;
6. The total liability due to the City by Touro was held to be $520,362.21.

Judgment Rendered May 14, 2004 ("Judgment No. 6")
On May 3, 2004, a hearing was held on Touro's motion for a directed verdict. Touro asserted that the verification of the City's petition by the finance director was deficient, because the finance director did not have actual knowledge of the facts forming the basis for the City's petition for the collection of taxes. Touro's motion was denied.

Summary of the Judgments
Judgment No. 2 and Judgment No. 5 are the two judgments awarding monetary amounts to Touro and the City, respectively. Judgment No. 2 awarded Touro $913,060.66 plus interest on Touro's reconventional demand. Judgment No. 5 awarded the City a total $520,362.21 due from Touro in connection with the City's tax collection case. The net result of these two judgments is that the City owes Touro $392,698.45 plus the interest awarded to Touro in Judgment No. 2.

*321 Appeals Of the Judgments

Appeals by the City
The City filed two appeals. In one appeal, the City is appealing the holding in Judgment No. 2 that the City owes Touro over $950,000 on Touro's reconventional demand. The City is also appealing the holdings in Judgment No. 2 denying the City's exceptions to Touro's reconventional demand and striking the City's answers to Touro's reconventional demand. In the City's other appeal, the City is appealing the holding in Judgment No. 5 that failed to award the City $31,096.22[5] in taxes that the City claims are owed to it by Touro and the holding that the City was not entitled to an award of penalties on the unpaid taxes awarded to it.

Appeal by Touro
Touro filed an appeal with respect to Judgment No. 1, Judgment No. 5, and Judgment No. 6. Touro is appealing the following rulings from Judgment No. 1:
1. the denial of its exception of no cause of action and prematurity, which was based on alleged deficiencies in the City's notice to Touro that an audit would be conducted;
2. the denial of its exception of no cause of action for audit costs, claiming that audit costs should not be assessed against it;
3. the denial of its exception of no cause of action based of the City's alleged failure to compute the tax assessment properly;
4. the denial of its motion to dismiss based on an allegedly unconstitutional fee arrangement between the City and its counsel; and
5. the partial granting of the City's motion to strike certain of Touro's responsive pleadings as being untimely filed.
Touro is also appealing the failure of the trial court to credit in Judgment No. 5 the amount the trial court found that the City owed to Touro in Judgment No. 2. Finally, Touro is appealing the trial court's denial of its motion for a directed verdict, which was rendered by the trial court in Judgment No. 6. Additionally, Touro filed an answer to the City's appeal of certain rulings in Judgment No. 5. In the answer Touro raised essentially the same issues that it is appealing.

DISCUSSION

Tax Collection Procedures
At the time the City filed suit against Touro to collect unpaid sales and use taxes, the law governing the collection of sales and use taxes was the Uniform Local Sales Tax Code, La. R.S. 47:337.1 et seq. (the "Tax Code"). The Tax Code establishes a scheme by which sales and use taxes are to be collected and by which taxing authorities can enforce the collection of those taxes. La. R.S. 47:337.2(B)(1) specifically states that "[n]otwithstanding any other provision of law or local ordinance to the contrary, and except as provided in Paragraph (3)[6] of this Subsection, the provisions of this Chapter shall apply in the assessment, collection, administration, and enforcement of the sales and use tax of any political subdivision." (Emphasis added.)
The General Administrative Enforcement section of the Tax Code, La. R.S. *322 47:337.24-337.86, establishes the procedures that taxing authorities may use to enforce the payment of sales and use taxes. There are two procedures that may be used when the taxpayer disagrees with the taxing authority's imposition of sales or use taxes.
First, when a taxpayer contests the amount of tax the taxing authority has assessed to the taxpayer, the taxpayer may remit the amount assessed to the taxing authority under protest as set forth in La. R.S. 47:337.63. The taxes paid are escrowed for a period of thirty days. If the taxpayer files suit to recover the taxes paid under protest, the funds remain in escrow until the suit is completed. If the taxpayer wins the suit, the escrowed funds are refunded with interest. Otherwise the escrowed funds are used by the taxing authority for the appropriate public purposes.
Alternatively, La. R.S. 47:337.61 authorizes the collection of sales and use taxes by summary court proceedings. Such proceedings "shall always be tried or heard by preference ... either in open court or in chambers, at such time as may be fixed by the court, which shall be not less than two nor more than ten days after notice to the defendant or opposing party." Additionally, "[a]ll defenses, whether by exception or to the merits, . . . must be presented at one time and filed in the court of original jurisdiction prior to the time fixed for the hearing." Further, the provisions of La. R.S. 47:337.61 expressly deny the trial court the right to extend the time for pleading defenses, and no continuances can be granted to any defendant except for legal grounds set forth in the Louisiana Code of Civil Procedure.
Summary proceedings for the collection of taxes are intended to afford taxing authorities an expedited method of obtaining court determination of whether contested taxes are owed. The procedural rules favor the taxing authority for a very compelling reason. The taxing authority is entrusted with using the money collected to provide services for the public good. Taxing authorities must have a regular, continuing income stream from tax collections so that funds are available to pay the expenses of the services that the taxing authorities must provide for the citizenry. When taxes are paid, they are used for this purpose and do not languish idly in the public treasury. They are spent. Only by collecting taxes as they become due can the taxing authority maintain the public services it is entrusted to provide.
The Tax Code also provides a method by which taxpayers may receive refunds of taxes previously paid that were not owed. The procedure for obtaining a refund of sales and use taxes is set forth in the Tax Code at La. R.S. 47:337.77. This statute lists the situations in which refunds are available. La. R.S. 47:337.81 further provides that if the tax collector fails to act on a properly filed claim for a refund within one year from the date the claim was received or if the collector denies all or part of the refund claim, the taxpayer is entitled to a hearing with the collector. The collector must then render a decision within the time period set forth in the statute. This decision may then be appealed by the taxpayer to a court of competent jurisdiction in accordance with the provisions of La. R.S. 47:337.81.

Appeals by the City

Reconventional Demand
We will first consider the assignments of error raised by the City in its appeal relating to Judgment No. 2., because the threshold issue in this case is whether Touro's reconventional demand was properly before the trial court. The City raised five assignments of error, all of *323 which can be summarized as a single assignment of error contending that the trial court judge erred in permitting Touro to file a reconventional demand in the summary tax proceeding brought by the City. Alternatively, the City argues that it should have been given the right to raise defenses to the reconventional demand.
As discussed above, the Tax Code provides an exclusive scheme for the payment and collection of local sales and use taxes. The Tax Code also provides for the payment of taxes under protest and for the filing of claims for refunds for taxes paid but not owed. See La. R.S. 47:337.2(B)(1). Louisiana courts have long considered tax statutes as sui generis, and the Tax Code is no exception to this concept. In Church Point Wholesale Beverage Co. v. Tarver, 614 So.2d 697 (La.1993), the Louisiana Supreme Court stated that "[i]t is well settled that laws regulating the collection of taxes are sui generis and constitute a system to which the general provisions of the Civil Code have little, if any application." 614 So.2d at 708. Very recently, in Clark v. State, XXXX-XXXX (La.App. 1 Cir. 1/28/04), 873 So.2d 32, the First Circuit Court of Appeal reiterated that laws regulating tax collection are sui generis and further stated that "[a]ttempts to assert refund claims against a taxing authority under La. C.C. art. 2299, et seq., dealing with the payment of a thing not due, have consistently been rejected by our courts." XXXX-XXXX, p. 7, 873 So.2d at 36 (footnote omitted).
In State v. Liberty Oil Co., 154 La. 267, 97 So. 438 (1923), the Louisiana Supreme Court made the following observation:
Respondent is not setting up an offset against the demands made upon it by the state, but, by means of its reconventional demand, is seeking, in a direct action, to obtain judgment against the state. This under the law it is not authorized to do. Besides, the amount paid by respondent as a license tax has gone into the public treasury and, presumably, has been appropriated. Its withdrawal from the state treasury is prohibited by the Constitution, `except in pursuance of specific appropriation made by law.'
154 La. at 270-71, 97 So. at 439-40 (emphasis added). Although the taxing authority in the instant case is a political subdivision of the state, and not the state itself, the rationale offered in the Liberty Oil case applies equally to the state and its political subdivisions. Once taxes are paid and placed in the general treasury, they are used for governmental purposes.
In City of New Orleans v. Jackson Brewing Co., 162 La. 121, 110 So. 110 (1926), the sole issue before the Supreme Court was the right of a corporation to recover on a reconventional demand a payment it made in error for a license to conduct its business. The corporation relied on the articles of the Louisiana Civil Code relating to the payment of a thing in error. The Supreme Court held that those articles were inapplicable. The Supreme Court stated:
The codal articles relied upon by the defendant are inappropriate to the issue presented. They are regulatory only of the right of private parties making and receiving payments in error, whereas laws regulating the collection of taxes or licenses are sui generis and constitute a system to which the general provision [sic]of the Civil Code have little, if any, application.
162 La. at 122-23, 110 So. at 111. The Supreme Court then explained why reconventional demands are not permitted in tax collections cases. The Supreme Court stated:
[T]he defendant corporation paid, and the city authorities received, the amount *324 now sought to be recovered under the reconventional demand. This money went into the municipal treasury, and presumably, since the contrary is not alleged or proved, has long since been expended for public purposes in the orderly administration of the business of the city.
162 La. at 123, 110 So. at 111.
In the instant case the initial hearing was intended to be set for February 23, 2004, which was within the prescribed time period of not more than ten nor less than two days after notice to the taxpayer. Because of an error in the order setting the hearing, the hearing was set for March 3, 2004. All defenses were required to be filed prior to the time set for the hearing. Rather than filing only its defenses to the tax collection summary proceeding, Touro also filed a reconventional demand. The reconventional demand sought a refund of previously paid taxes. Touro, therefore, claimed a credit in the amount of the taxes that it allegedly overpaid against any taxes for which it was cast in judgment by the trial court. Because there is no provision in the statutory scheme for collecting taxes to permit the filing of such a reconventional demand, Touro should not have been permitted to file one. The only defenses raised must be those pertinent to the collection of the taxes at issue in the summary proceeding.
Because the laws regulating tax collections are sui generis and do not contemplate the filing of reconventional demands in summary proceedings to enforce the payment of taxes, it was improper for the trial court to permit a reconventional demand to be filed in the instant case. As a result, the trial court denied the City the right to file any defenses to the reconventional demand, because all defenses had to be filed prior to the date set for the first hearing under the procedural provisions for a summary tax proceeding. La. R.S. 47:337.61.
If reconventional demands were permitted in summary tax proceedings, the taxpayer could always thwart the taxing authority's attempts to collect taxes by filing a reconventional demand immediately before the time the tax case was set for hearing. Then the tax collector would be precluded under La. R.S. 47:337.61 from filing an answer setting forth its defenses to the reconventional demand. That is exactly what Touro attempted to do in the instant case, but a reconventional demand is not permitted by the sui generis nature of the laws governing the collection of taxes in a summary proceeding.
Based on the foregoing discussion, we find that the City's assertion that Touro should not have been allowed to file a reconventional demand in a summary tax proceeding is correct. Therefore, we dismiss Touro's reconventional demand and vacate Judgment No. 2.

Failure to Award the Full Amount of the Assessed Taxes and Penalties
The City's second appeal pertains to Judgment No. 5. The City makes two assignments of error with respect to Judgment No. 5. First, the City contends that the trial court erred in failing to impose taxes in the amount of $15,267.56[7] on the sales of service contracts for medical equipment, failing to impose taxes in the amount of $14,078.78 on the sale of repair services and replacement parts for medical equipment, and failing to impose taxes in the amount of $1,750.00, which Touro stipulated at trial were owed. Second, the *325 City contends that the trial court erred in not holding Touro liable for penalties associated with the tax liability found to be owing.

Failure to Impose Taxes
Touro contested the assessment of a total of $29,346.34 in taxes relating to service and repair contracts for medical equipment that had been attached to the physical structure of the hospital operated by Touro. This tax was imposed on the sale of a service. "Sale of services" is defined in City Code section 150-441 to include "[t]he furnishing of repairs to tangible personal property," and for purposes of the "sale of services" definition, tangible personal property is deemed to "include machinery, appliances, and equipment which have been declared immovable by declaration under the provisions of article 467 of the Louisiana Civil Code, and things which have been separated from land, buildings, or other constructions permanently attached to the ground or their component parts as defined in Article 466 of the Civil Code." City Code section 150-441.
In the instant case the property for which repair services were furnished consisted of computerized tomography equipment and a radiation therapy simulator. Touro argues that these items of medical equipment are component parts of Touro's hospital building and, as such, are immovable property. Touro, therefore, argues that repair services on the equipment are exempt from the City's tax on the sale of services for tangible personal property. As discussed above, however, the taxing ordinance expressly deems "tangible personal property" to include certain immovables for the purpose of the imposition of sales taxes on the sale of services. Those items that are defined in La. Civil Code art. 466 as component parts of an immovable are deemed by the "sale of services" taxation provisions in the City Code to be "tangible personal property."
La. Civil Code art. 466 provides as follows:
Things permanently attached to a building or other construction, such as plumbing, heating, cooling, electrical or other installations, are its component parts.
Things are considered permanently attached if they cannot be removed without substantial damage to themselves or to the immovable to which they are attached.
The first paragraph of article 466 defines immovables to include component parts permanently attached to an immovable, and the second paragraph establishes a test that can be used to determine whether an item has become a component part of an immovable. See Willis-Knighton Medical Center v. Caddo-Shreveport Sales and Use Tax Commission, XXXX-XXXX (La.4/1/05), 903 So.2d 1071. For a movable item to be reclassified as an immovable, the item must be permanently attached to immovable property in such a way that it cannot be removed without substantial damage to either the item or to the immovable to which it is attached.
The medical equipment at issue in this case is either movable property or a component part of a building that is an immovable under article 466. If the medical equipment is movable property, it is clear that the repair and service of the equipment is the repair and service of tangible personal property to which the City's sales tax is applicable. Touro, however, contends that the medical equipment is immovable under La. Civil Code article 466, because it has become a component part of Touro's hospital building. Therefore, Touro argues that the service and repair of the medical equipment is the service and repair *326 of an immovable to which the City's sales tax ordinance does not apply.
Based on a societal expectations analysis[8] and a disjunctive reading of the two paragraphs in La. Civil Code article 466, i.e. reading the two paragraphs as creating two categories of component parts, the trial court judge determined that the computerized tomography equipment and the radiation therapy simulator are immovables. In the Willis-Knighton Medical Center case, the Louisiana Supreme Court expressly held that the two paragraphs of La. Civil Code article 466 should not be read disjunctively and that the societal expectations analysis was not the proper method to determine what constitutes an immovable under article 466. XXXX-XXXX, p. 18, 903 So.2d at 1083. Because the trial court's ruling was based on legal concepts that have been held to be invalid by the Supreme Court, the trial court's determination that the medical equipment at issue is immovable property is not entitled to deference by this Court. Kem Search v. Sheffield, 434 So.2d 1067, 1071-72 (La.1983).
In the Willis-Knighton Medical Center case, the Supreme Court held that nuclear cameras that were installed in a hospital were not immovables under article 466. XXXX-XXXX, p. 16, 903 So.2d at 1082. The cameras were placed on epoxy foundations and bolted to the floor in specially prepared rooms. To remove the cameras from the hospital building, it was necessary to remove the bolts and disconnect the wiring, necessitating minor repairs to the sheetrock and the replacement of floor tiles. The Supreme Court found that this did not constitute the "substantial damage" to the cameras or to the building that is required under the second paragraph of article 466 for a component part of a building to be an immovable. Id.
In the instant case, there was testimony at the trial that the computerized tomography equipment and the radiation therapy simulator were attached to or integrated into the hospital building such that they could not be removed without damage to the building. The computerized tomography equipment was wired into the electrical system of the hospital, as opposed to being plugged into an electrical wall socket, and it was also incorporated into the hospital building's water system for the purpose of chilling the equipment. The computerized tomography equipment and the radiation therapy simulator require special flooring, and the removal of these items would cause some damage to the floor to which they were bolted or otherwise permanently attached.
The damage to the hospital building that would result from the removal of the computerized tomography equipment and the radiation therapy simulator was the type of damage that would have resulted from the removal of the nuclear cameras in the Willis-Knighton Medical Center case. Therefore, we find that the computerized tomography equipment and the radiation therapy simulator are movable property clearly subject to the sales tax that has been imposed by the City on the repair of tangible personal property.
We note that the City also argues that if the computerized tomography equipment and radiation therapy simulator *327 at issue in this case are immovable, rather than movable, property, this medical equipment is the type of immovable property contemplated by the definition of "tangible personal property" for purposes of the "sale of services" definition in City Code section 150-441. The City contends that any immovable component part under La. Civil Code art. 466 is defined as "tangible personal property" for the purposes of the sales tax on "sales of service" pursuant to City Code section 150-441. We agree. Therefore, regardless of our finding that the medical equipment is movable property under the Willis-Knighton Medical Center case, it would still be subject to taxation if it were an immovable component part of the hospital building. This is because City Code section 150-441 has defined component parts of an immovable as defined in La. Civil Code art. 466 to be "tangible personal property" for purposes of the sales tax imposed on the "furnishing of repairs to tangible personal property."
We find that Touro was properly assessed $29,346.34 in taxes relating to the service and repair contracts for the medical equipment whether or not the property was movable or immovable. Therefore, we reverse the trial court judgment denying the City's claims to the $29,346.34 in sales taxes assessed on the service and repair contracts for the computerized tomography equipment and the radiation therapy simulator. With respect to the $1,750.00 in taxes that Touro and the City stipulated were owed by Touro, the trial court judgment is amended to award this amount in favor of the City, also.

Penalties
The City contends that the trial court erred in failing to impose penalties upon Touro in connection with the additional sales taxes that it owes. La. R.S. 33:2841 provides that "[a] political corporation may through the officer whose duty it is to receive and collect the taxes and moneys due the corporation, enforce the collection of any taxes due to it, within the time and in the manner provided for the collection of taxes due to the state."
La. R.S. 47:1602 provides in relevant part as follows:
(A) When any taxpayer ... fails to timely remit to the secretary of the Department of Revenue the total amount of tax that is due on a return which he has filed, there shall be imposed, in addition to any other penalties provided, a specific penalty to be added to the tax.
....
(2) In the case of the filing of a return without remittance of the full amount due, the specific penalty shall be five percent of the unremitted tax if the failure to remit continues for not more than thirty days, with an additional five percent for each additional thirty days or fraction during which the failure to remit continues. The penalty imposed by this Paragraph for each thirty-day period shall be calculated only on the additional amount due from the taxpayer after the deduction of payments timely submitted, or submitted during any preceding thirty-day period.... The penalties provided for by ... this Section shall not be imposed for more than five thirty-day periods in total for each tax return required to be filed.

(Emphasis added.)
Section 150-702 of the City Code provides as follows:
When any taxpayer fails to pay a tax or any portion thereof on or before the date prescribed for its payment, interest at the rate of 1¼ percent per month shall be added to the amount of tax due from the due date until paid. In addition to the interest that may be so due, there *328 shall also be collected a penalty of five percent of the tax if the failure is for not more than 30 days with an additional five percent for each additional 30 days or fraction thereof during which the failure continued. If a suit is filed to collect the tax due, there shall also be collected attorneys' fees at the rate of ten percent on the aggregate amount of tax, interest and penalty.
In Anthony Crane Rental, L.P. v. Fruge, XXXX-XXXX (La.10/21/03), 859 So.2d 631, the Louisiana Supreme Court held that "local taxing authorities are authorized to impose, through proper elections, a 15% interest penalty under La. R.S. 33:2746 and, in addition, 25% penalties and 10% attorney fees as set forth in La. R.S. 47:1602 and 47:1512 on delinquent taxes." XXXX-XXXX, pp. 11-12, 859 So.2d at 639. Therefore, the City has the authority to impose a penalty on delinquent taxes in the amount of 5% for each thirty days that delinquent sales and use taxes remain delinquent, but the maximum penalty cannot exceed 25%.
Touro, however, argues, and the trial court agreed, that the state statute limits the imposition of a penalty on delinquent taxes to those cases where (a) no return has been filed or (b) the amount of tax actually shown on the return was not paid. Touro interprets the language in La. R.S. 47:1602 to mean that penalties cannot be imposed where a return has been filed if the amount shown of the return as being due is paid. We do not, however, read the language in La. R.S. 47:1602 to mean that no penalty can be imposed once a return has been filed and the amount that is shown as being due by the taxpayer has been paid, even if the amount is not the amount actually owed. This would lead to absurd consequences. For example, a taxpayer could file a return, understate the amount of tax owed, pay the understated amount of tax, and avoid a penalty for the underpayment of taxes.
We read the phrase "the total amount of tax that is due on a return which he [the taxpayer] has filed" in La. R.S. 47:1602 to mean the total amount of tax that is owed by the taxpayer for the period that is supposed to be covered by the tax return. The amount that is shown on the return to be due may or may not be the amount actually owed by the taxpayer. The penalty is to be computed on the amount of the tax that is, in fact, owed less the amount that was remitted for the period covered by the return.
We find Touro's argument with respect to the penalty assessed by the City to be without merit, and we reverse the trial court's judgment on this issue. Under section 150-702 of the City Code, we find that Touro was properly charged a five percent penalty on the amount of the underpayment of the sales taxes owed by it for each thirty day period that the underpayment was outstanding. Because La. R.S. 33:2841 permits the City to enforce its sales and use tax ordinances "within the time and in the manner provided for the collection of taxes due to the state," and because La. R.S. 47:1602 limits the amount of penalties the state can collect on delinquent tax payments to twenty-five percent of the amount of the delinquent taxes, the penalties that can by imposed by the City are capped at twenty-five percent. Therefore, we find that the City can collect no more than a twenty-five percent penalty.

Appeal by Touro
Touro has raised six assignments of error relating to Judgment No. 1 and Judgment No. 5. Touro is also appealing the denial of its motion for a directed verdict in Judgment No. 6.
*329 ASSIGNMENT OF ERROR NO. 1: The trial court erred in denying Touro's exceptions of prematurity and no cause of action based on the City's deficient audit notice, because the City's audit notice failed to comply with the notice provisions of La. R.S. 33:2719(E), and its successor, La. R.S. 47:337.26(D). As such, the City's audit of Touro and the resulting litigation is the product of an invalid audit notice, and thus illegal.
On May 4, 2001, the City mailed to Touro written notice that an examination of Touro's books and records would be conducted on behalf of the City. The notice provisions of the Tax Code contained in La. R.S. 47:337.26(D) did not become effective until July 1, 2003. Section 5 of Act No. 73 of 2003 Regular Session of the Louisiana Legislature, which enacted the Tax Code, provided as follows:
Section 5. This Act shall apply to the sales and use tax of any political subdivision of the state which is not a state-wide political subdivision, and any interest, penalty, and other charges related to such tax, which become due on and after July 1, 2003.

(Emphasis added). Clearly, the provisions of La. R.S. 47:337.26 did not apply to a notice given in connection with a tax audit conducted prior to July 1, 2003. The tax years covered by the audit were 1998 through 2002.
Touro also argues that if La. R.S. 47:337.26 did not apply to the City's audit notice, then La. R.S. 33:2719(E) applied. La. R.S. 33:2719(E) was the notice statute in effect prior to its repeal in connection with the enactment of the Tax Code. The notice requirements of La. R.S. 47:337.26(D) are essentially the same as those that were contained in La. R.S. 33:2719(E).
The City contends, however, that City Code section 150-484 governed the notice requirements for the City's audit notice. Section 150-484 provides as follows:
Any notice required to be given by the director pursuant to this article [the article on sales and use taxation] may be given by personal service on the dealer for whom it is intended or be mailed to the dealer for whom it is intended, addressed to such dealer at the address given in the last report filed by him pursuant to the provisions of this article or, if no report has been filed, then to such address as may be obtainable. The mailing of such notice shall be presumptive evidence of its receipt by the dealer to whom it is addressed.
The notice given by the City in this case complies with the requirements of section 150-484, but it does not comply with the requirements of La. R.S. 33:2719(E).
The City argues that it was not required to comply with La. R.S. 33:2719(E), because the City is governed by a home rule charter. The Louisiana Constitution permits any local governmental subdivision to adopt or amend a home rule charter. La. Const. Art. 6, § 5. The home rule charter must be "[s]ubject to and not inconsistent with this constitution." La. Const. Art. 6, § 5(A). The powers of a local governmental subdivision under a home rule charter are constrained only by the limitation that the powers cannot be "denied by general law or inconsistent with this constitution." La. Const. Art. 6, § 5(E).
Touro argues that the notice provision in the City Code is "denied by general law," because at the time the City gave notice of its audit to Touro, La. R.S. 33:2719(E) required specific information to be included in the notice of a tax audit, and the City Code did not require the information specified to be given. The City counters that the City's home rule charter permitted it to enact ordinances for the enforcement *330 and collection of local sales and use taxes and that only in the absence of such ordinances did the City need to look to the provisions of state law. Title 33 of the Louisiana Revised Statutes, where La. R.S. 33:2719(E) is codified, contains the provisions of state law that apply to parishes and municipalities.
Prior to the enactment of the Tax Code, the City gave notice of tax audits pursuant to section 150-484 of the City Code. As of the effective date of the Tax Code, which was after the date the notice of the audit was given in the instant case, the City was required to comply with the requirements of the Tax Code notwithstanding any local ordinances to the contrary. One of the stated purposes of the Tax Code was "[t]o benefit both taxpayers and local tax collectors by promoting uniformity to the extent possible in the assessment, collection, administration, and enforcement of the sales and use taxes ...." La. R.S. 47:337.2(A)(1)(b). The notice requirement of La. R.S. 33:2719(E), which had been applicable to municipalities and parishes that had not adopted notice provisions pursuant to a home rule charter or as otherwise permitted by law, was codified in the Tax Code as La. R.S. 47:337.26(D) and made applicable to all local taxing authorities effective July 1, 2003.
The trial court judge determined that Touro's exceptions of prematurity and of no cause of action based on notice given by the City were without merit. She stated in her oral reasons for her decision that the court in the two cases cited by Touro for the proposition that the notice requirement in the City Code was superceded by the provisions of La. R.S. 33:2719(E) gave "greater weight [sic] authority to the Home Rule Charter." She then stated that "[t]he Home Rule Charter appears to be the governing authority in my mind."
In City of Baton Rouge v. Williams, 95-0308 (La.10/16/95), 661 So.2d 445, the Louisiana Supreme Court enunciated the burden of proof that a party must meet to successfully contest a local ordinance adopted pursuant to a home rule charter. The Supreme Court stated:
To demonstrate that a home rule municipality's local law abridges the police power of the state, the defendant must show (1) that the local law conflicts with an act of the state legislature, and that (2) the state law is necessary to protect the vital interest of the state as a whole.
661 So.2d at 450. See also City of New Orleans v. Commissioners of Orleans Levee District, 93-0690 (La.7/5/94), 640 So.2d 237, 252, where the Supreme Court stated that "home rule abilities and immunities are to be broadly construed, and any claimed exception to them must be given careful scrutiny by the courts."
We do not find that Touro met the burden of proof required by the Williams case. City Code section 150-484 does not conflict with La. R.S. 33:2719(E). The requirements of section 150-484 are less specific than those in La. R.S. 33:2719(E), but the two notice provisions do not conflict. We agree with the trial court judge that Touro's exception of prematurity and no cause of action with respect to the notice given by Touro should have been denied, and we affirm her judgment on that issue.
ASSIGNMENT OF ERROR NO. 2: The trial court erred by failing to find that the City did not give Touro written notice of its intent to use sampling procedures, because La. R.S. 47:337.35, which is based on La. R.S. 47:1541, requires that the tax assessor give written notice of its intent to use sampling procedures. Because the City failed to give such notice, it has not established any liability on the part of Touro.
*331 Touro argues that the City failed to give it written notice of the sampling procedures that were used in the audit. Touro contends that La. R.S. 47:337.35 required the City to give such notice. La. R.S. 47:337.35(C)(1) provides that "[b]efore using a sampling procedure to project the findings of an audit and establish a tax liability, the collector or his designee shall notify the taxpayer in writing of the sampling procedure he intends to use, including but limited to how the tax will be computed, the population to be sampled, and the type of tax for which the tax liability will be established." As discussed above, however, the Tax Code, of which La. R.S. 47:337.35(C)(1) is a part, was not effective until July 1, 2003. The audit was commenced prior to that time. Therefore, La. R.S. 47:337.35(C)(1) is inapplicable in the instant case.
Touro also contends that even if La. R.S. 47:337.35(C)(1) were not applicable in the instant case, then La. R.S. 47:1541(C) was applicable. La. R.S. 47:1541(C)(1) provides that "[b]efore using a sampling procedure to project the findings of an audit and establish a tax liability, the secretary or his designee shall notify the taxpayer in writing of the sampling procedure he intends to use...." (Emphasis added). La. R.S. 47:1501 defines "secretary... when used in this Title [Title 47: Revenue and Taxation]" to mean "the secretary of the Department of Revenue and Taxation for the state of Louisiana."
The reason the secretary of the Department of Revenue and Taxation for the State of Louisiana is required pursuant to La. R.S. 47:1501 to give notice of a sampling procedure to be used in a tax audit is that La. R.S. 47:1501 applies to the collection of state taxes. Subtitle II of Title 47 [Revenue and Taxation] of the Louisiana Revised Statutes, which includes both La. R.S. 47:1501 and La. R.S. 47:1541(C), is titled "Provisions Relating to Taxes Collected and Administered by the Collector of Revenue." Local sales taxes, which are at issue in this case, are not collected by the state collector of revenue. Therefore, La. R.S. 47:1541(C) does not apply to the instant case.
We find that neither La. R.S. 47:337.35(C)(1) nor La. R.S. 47:1541(C) applied to the audit in the instant case. Thus, the City was not required at the time of the audit to give written notice of its use of a sampling procedure. We affirm the trial court's judgment that the City was not required to give Touro written notice of the sampling procedure to be used in the audit.[9]
ASSIGNMENT OF ERROR NO. 3: The District court erred by not imputing or crediting the amount that the City owes Touro against the amount that Touro owes the City.
This assignment of error is moot, because Touro's reconventional demand was not properly before the trial court in a summary tax proceeding. For the reasons previously discussed, we have vacated the judgment in favor of Touro in Judgment No. 2.
ASSIGNMENT OF ERROR NO. 4: The trial court erred by applying City Code section 150-707 to the City's audit costs. Instead La. R.S. 47:337.75 governs.
Touro argues that the governing law with respect to audit fees that may be charged by the City is La. R.S. 47:337.75. That statute is part of the Tax Code, which did not become effective until after the *332 audit was substantially completed. Although the auditor's report was dated August 23, 2003, most, if not all, of the audit itself took place prior to the effective date of La. R.S. 47:337.75, which was July 1, 2003. Therefore, City Code section 150-707 is the applicable law.
City Code section 150-707 reads in relevant part as follows:
If the estimate and assessment made by the director requires an examination of books, records or documents, or an audit thereof, the director shall add to the assessment of the cost an hourly basis of such examination. The cost to the taxpayer shall be assessed on an hourly basis, plus reasonable expenses, not to exceed 30 percent of the amount of additional taxes determined to be due as the result of the audit, together with any penalties accruing thereon.
The amount of the audit costs was $21,386.00. Although it is not clear from the record whether this was assessed on an hourly basis, paragraph (4) of La. R.S. 47:337.61 provides that the pleadings in a summary tax collection proceeding are "accepted as prima facie true and as constituting a prima facie case." Touro has not asserted that the audit costs were not based on an hourly basis and has presented no evidence to the contrary. Therefore, we affirm the trial court judge's award of audit costs to the City.
ASSIGNMENT OF ERROR NO. 5: The trial court erred in denying Touro's Motion to Dismiss based on the unconstitutional fee arrangement between the City and its lawyers, because they have illegally contracted for a twenty-five percent contingency fee, in complete derogation of the statutory maximum of ten percent.
Touro asserts in its brief that it is not obligated to pay attorneys' fees incurred by the City in connection with the collection of the taxes assessed to Touro. Its rationale for this position is based on the trial court's granting of its reconventional demand, which results in a net payment due to Touro by the City. Because we have vacated the judgment on the reconventional demand contained in Judgment No. 2, this arguments fails. Touro, therefore, is liable for attorneys' fees in that amount of ten per cent of the taxes, penalties, and interest due to the City.
Touro also contends that the fee arrangement between the City and its lawyers contravenes the statutory maximum of ten percent for attorneys' fees, because the contract between the City and its attorneys provides for a twenty-five percent contingency fee for the City's attorneys. This contention is without merit. Touro was assessed only the statutory maximum of ten percent attorneys' fees, which Touro concedes is permitted by statute. Touro is not a party to the contract between the City and its attorneys, and Touro is being assessed attorneys' fees in complete conformity with the applicable statute.
ASSIGNMENT OF ERROR NO. 6: The trial court erred in denying Touro's Motion for a Directed Verdict.
Touro cites paragraph 4 of La. R.S. 47:337.61 as support for its contention that the trial court should have granted a directed verdict in its favor. That paragraph provides as follows:
Whenever the pleadings filed on behalf of the taxing authority, or on behalf of the collector, shall be accompanied by an affidavit of the collector or of one of his assistants or representatives or of the counsel or attorney filing the same, that the facts as alleged are true to the best of the affiant's knowledge or belief, all of the facts alleged in said pleadings shall be accepted as prima facie true and as constituting a prima facie case, and *333 the burden of proof to establish anything to the contrary shall rest wholly on the defendant or opposing party.
Touro contends that the affidavit that accompanied the City's petition in the instant case was made by a person who did not have knowledge of the facts in the petition, because he testified that he did not direct the City's audit of Touro's books and records, did not review the proposed assessment at the close of the audit, and did not become involved in the audit until February 2004. Therefore, Touro argues that the affidavit was insufficient to establish a prima facie case in favor of the City.
The affidavit attached to the City's petition was made by Derrick Muse. He was the Deputy Director of the City of New Orleans Department of Finance, and he attested that he was responsible for insuring "that all taxpayers paid the appropriate tax due under the applicable sales and use tax ordinances of various taxing bodies in the Parish of Orleans." He further attested that he had read the petition in the instant case, and he stated that "the facts as alleged are true to the best of my knowledge."
The trial court judge disagreed with Touro's assertion that the affidavit attached to the City's petition created an infirmity in the petition. The trial court judge also found that the City had presented sufficient testimony regarding the basis of the City's petition through its auditor, Debbie Sawyer. We agree with the trial court judge. Mr. Muse was entitled to rely on the information obtained from the audit conducted by the City's accountants and was not required to conduct or direct the audit himself. He gave his sworn testimony in the affidavit that he had read the petition and that the facts were true to the best of his knowledge. That is all that is required by paragraph 4 of La. R.S. 47:337.61. Touro had the burden of proof under that statute to prove otherwise, and Touro has not done so.

CONCLUSION
Based on the foregoing, we affirm Judgment No. 1, Judgment No. 3, and Judgment No. 6. We vacate Judgment No. 2, and we vacate Judgment No. 4 as moot. Judgment No. 5 is amended as follows:
(1) The award of $307,844.96 of uncontested underpaid audited tax liability is hereby amended to include an additional $1,750.00 in uncontested taxes.
(2) The denial of the City's claim for taxes owed on repair service contracts and replacement parts for Touro's computerized tomography equipment and radiation therapy simulator is reversed, and the City is hereby awarded $29,346.34 for these taxes.
(3) That part of the judgment denying the City's claims against Touro for penalties on Touro's unpaid sales and use taxes is reversed, and the judgment is amended to provide for a penalty of five percent of the tax that Touro has failed to pay for each thirty day period that the tax remains unpaid, provided, however, that the five percent penalty shall not be imposed for more than five thirty-day periods in total for each tax return that was required to be filed.
(4) That part of the judgment granting the City's claims against Touro for audit costs is hereby amended by deleting the following sentence: "Since no penalties are awarded, Touro is liable for audit cost of $21,386.00."[10]
(5) That part of the judgment ordering that the City's claim against Touro for *334 attorney's fees at the rate of ten percent on the aggregate amount of tax, interest, and penalties is hereby amended by deleting the following sentence: "As there was no penalty awarded, Touro is liable for the $47,305.66 in attorney's fees."[11]
(6) That part of the judgment finding that "the total liability due the City by Touro, inclusive of tax, interest, audit cost, and attorneys fees, is $520,362.21" is vacated, and this case is remanded for a determination of the exact amount of the judgment against Touro, including the $307,844.96 and the $1,750.00 in uncontested tax liability, attorneys' fees, audit costs, penalties, and interest.
AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AMENDED IN PART, AND REMANDED.
MURRAY, J., dissents in part with reasons.
BELSOME, J., dissents in part and concurs in part with reasons.
MURRAY, J., dissents in part with reasons.
I disagree with the majority's holding that the City is entitled to collect a penalty from Touro under La. R.S. 47:1602. Section 1602 provides for the imposition of a specific penalty to be added to the tax owed when the taxpayer has not timely remitted "the total amount of tax that is due on a return which he has filed." La. R.S. 47:1602. The majority construes this to authorize the imposition of a penalty when the taxpayer has not paid the amount he actually owed, even though he has filed a return and paid the amount shown as owed on that return. It reasons that it would lead to absurd consequences if this language were interpreted so as to allow a taxpayer to avoid a penalty simply by filing a return showing an amount less than that actually owed, and paying the incorrect amount of tax as shown on the return.
Although there apparently is no published decision addressing the meaning of the statutory language in question, one commentator has noted that the Legislature added this language to Section 1602 to remedy what was perceived to be a common taxpayer abuse problem. Before the language at issue herein was added it was not uncommon for taxpayers, in order to avoid late filing penalties, to timely file returns reflecting their tax liability but to fail to remit any payment with the return. Because the Department did not have the power to impose penalties in such instances, the taxpayer's only cost was for interest imposed under La. R.S. 47:1601. "This practice by taxpayers denied the state the proper and timely receipt of its tax revenues." Bruce J. Oreck, Louisiana Sales & Use Taxation § 7.2[1] n. 33 (2nd ed.1996).
By adding the language at issue herein, the Legislature provided for penalties when taxpayers fail to remit the tax calculated on the return as filed. Id. This statutory language, however, does not allow for penalties for underpayments discovered by an audit. Id. "Both the statutory language and the legislative history behind the amendment of La. R.S. 47:1602 unquestionably indicate that no penalties can be imposed under that provision with respect to underpayments determined as a consequence of an audit." Id.
*335 I, therefore, would affirm the portion of the judgment that denies penalties. For this reason, I respectfully dissent in part.
BELSOME, J., dissents in part and concurs in part with reasons.
I respectfully dissent in part and concur in part. I agree with the majority that procedurally the reconventional demand was not the proper procedural vehicle to contest tax exposure during the relevant time periods under the tax code. However, this writer finds that Touro's reconventional demand preserved Touro's rights against the City for refund claims based on erroneous overpayments by Touro. Accordingly, Touro's reconventional demand should be remanded to the trial court to proceed via ordinary proceeding.
Further, I disagree with the majority that the computerized tomography equipment and radiation therapy simulator at issue are the type of immovable property contemplated by the definition of "tangible personal property" for the purposes of the "sale of services" definition in the City Code section 150-441.
On all other issues, I respectfully concur with the majority opinion.
NOTES
[1] Although the audit notice was given in 2001, the audit covered four calendar years, including 2002.
[2] The City's motion for a summary court proceeding was also based on Sec. 150-191 of the Code of the City of New Orleans, which is a parallel statute to La. R.S. 47:337.61.
[3] There was a defect in the original order setting the trial date so the operative deadline under paragraph (2) of La. R.S. 47:337.6 for filing defenses was prior to the scheduled hearing on March 3, 2004.
[4] Not only did Touro file a reconventional demand for a refund of the claimed overpayment of taxes, Touro also filed an administrative claim for a refund with the City pursuant to La. R.S. 47:337.77.
[5] Although Judgment No. 5 stated that $37,352.72 of the assessment was contested, the City claimed that only $31,096.22 was contested.
[6] Paragraph (3) provides that other provisions of law or local ordinances shall control the rate, effective date, term, purpose, certain exclusions, and certain exemptions relating to sales and use taxes, as well as the vendor's compensation.
[7] In the City's assignments of error, the City states that this amount is $15,791.88, rather than $15,267.56, but in the body of its brief the City refers to the latter number, which is the number we will use.
[8] The societal expectations analysis is described in Willis-Knighton Medical Center v. Caddo-Shreveport Sales and Use Tax Commission, XXXX-XXXX, p. 7 (La.4/1/05), 903 So.2d 1071. Under the societal expectations test, the court considers the views of contemporary society regarding whether there is an expectation that a particular item would ordinarily be a part of a building. Additionally, the degree of connection or attachment to the building is considered.
[9] We note that this result would be different had the audit occurred after the effective date of the Tax Code, which does require local tax collectors to give written notice of sampling procedures. La. R.S. 47:337.35(C)(1).
[10] Because we are awarding penalties that were not awarded by the trial court, the amount of the audit costs owed by Touro to the City must be recalculated on remand. Therefore, the current reference in Judgment No. 5 to the previously calculated amount of the audit costs must be deleted.
[11] Because we are awarding penalties that were not awarded by the trial court, the amount of the attorneys' fees owed by Touro to the City must be recalculated on remand. Therefore, the current reference in Judgment No. 5 to the previously calculated amount of attorneys' fees must be deleted.